Jr., 519-0165. Mr. Putnam, thank you. We are ready to go. May it please the Court, Counsel. Should a juvenile be deprived of his constitutional rights because of ineffective assistance of counsel, the State says that's okay. Our position is you can raise constitutional issues at any time, at any level. The State says no, you can't. We have in our brief provided a very detailed factual background and the notice we received from the clerk's office about the argument that says that the Court will be familiar with the factual background, so I am not going to dwell on that. The only thing I will say briefly is that it is a very detailed and a very strong factual basis, not based on spin or perception, but rather what actually took place in the case based on the Court's thought, not my perception or anything of that nature. The Illinois has historically had an attitude of philosophical approach that for every wrong there should be a remedy. And that's why examining the circumstances and recognizing the question as to jurisdiction, which goes back to law school values. In certain situations, the law has said you can use mandamus, which is essentially a civil procedure. In some situations, the law says you can use letter of prohibition, which for all intents and purposes is a civil type of approach. And so we feel that seeking a declaratory judgment is merely another remedy to address a very unique situation. And what makes it so unique is the fact that you're dealing with a juvenile. The juvenile, by the very name of the case, and you see cases in dicta, parents, patriae, and special consideration. For a juvenile, of course, they don't act on their own. They have to act through somebody else, an adult, a parent that's here, their lawyer, the judge. When all of that fails them, what do they have? At age 15, age 14, whatever it may be, you're looking at a child. Granted, some more childish than others, but nonetheless a child. And that you're holding them as a child to a standard that they can't possibly meet. And so we think a declaratory relief's saying that because it's a juvenile. How does this court, or even this trial court, how does the trial court acquire jurisdiction? Well, that's an interesting question, Your Honor. I mean, in order to bring a declaratory judgment, it presumes the court has jurisdiction. Well, Your Honor, we originally filed this in different courts. What court did you file this in? In Judge Hayden's court in conjunction with a companion case. But it's still the circuit court. I'm sorry? That's still the circuit court. So my question remains, how does the circuit court acquire jurisdiction over this controversy? Because by seeking the declaratory judgment with the rights of the juvenile who can't defend themselves, that gave the court jurisdiction. I understand what the court is saying. I understood the ruling in the circuit court. But unless we have that type of remedy, there's no remedy. Well, but there was a remedy. And the State's position is that that time period had expired. And the State in that regard is absolutely correct. And in our brief and in our filings, we conceded that point. I saw it. I have to tell you, Mr. Hutnick, I was rubbing my head saying, why are we here? I mean, if you can see that the time has gone. But a wrong took place through no fault of the juvenile. But after the juvenile became an adult, there was a time period, theoretically. Yes. And so we have another period of time that goes by. And it's not until some time later that he decides, oh, I'm going to file a declaratory judgment for my juvenile. Was there some disabling event, for example, that prevented the adult from filing in a timely manner? He didn't know. How could he not know? I don't know how to answer that. The juvenile case was over. No one was giving him any other legal advice as to his rights at that point. Yes, during the disposition hearings, Judge Brandon had matched him about if you can move to sentence. But after that, after that, and he began to serve the sanction, he received legal advice from no one. Is there a requirement under the law that he continue to receive advice? From no one. But is there a requirement under the law that he continue to receive that? Not that I'm aware of or I could find in any legal research I conducted. But that being settled, it doesn't change the fundamental fact that he initially was deprived of his constitutional rights. Now, that's why recognizing the time element, I thought that a declaratory judgment, that because there is no other remedy. I went through every case I could possibly find. And yes, there's a lot of dicta and there's a lot of saying that you can raise constitutional rights at any time, but it's dicta. The fact situations are different. And each time I come to the conclusion, there's no question that the boy was wrong. But there's nothing you can do about it. That strikes me as fundamentally unfair, matter of fact, phrase like manifest injustice and the colloquialisms we're all so used to. And that's why I thought through declaratory judgment. We can address that issue as to juvenile without backing into the time element. There isn't anything else he can do short of that, nothing that I could find. And if my research is not up to par, then I apologize to my client and I apologize to the court. I don't think that's the case. I don't know. What you're saying is for every wrong, there must be a remedy to fix it. That's just not the law in Illinois. But that's the philosophy of the Constitution, the state of Illinois. Well, no, I'm not sure that's right. Well, because we have only justicial controversies can grant us jurisdiction. Then I stand corrected. I apologize to the court. But if there is a wrong, should there be a remedy? Absolutely. And I'll stand firm on that. I may not be Mr. Justice Holmes with great philosophy to say why, but I believe it firmly. For every wrong, there should be a remedy. And there is no question. In this case, the wrong was terrible. And even though the statement is brief, Page A takes a position, well, it's not really criminal. There are two things that bother me about the Cavalier approach. Number one, I don't know of anybody who would want their child to go through the rest of their life having been determined to be a sexual predator of any kind. I don't know who. I don't think so. And the other thing is you put the boy in that position. If he stumbles, as he may have, did he report from Cahokia to Belleville when he moved from one room apartment to another and the state wants to put him in prison for three years? Is that serious? But that didn't happen. He got through his five years probation. There was never a violation. And, in fact, it was determined by the court that his requirement status would be taken away. He no longer has to register under the Sex Offender Registration Act. So that has not followed him. That has gone away. Well, Your Honor, with respect, the reason he came to me and all this came to light, because prior to the order being entered saying you don't have to register anymore, something I filed on his behalf, he didn't register within a couple of communities. And the prosecution wants three years out of his life for that. So in terms of the importance of setting aside a wrong, it can't get any more important than that. Well, that's not the record. I'm sorry? I didn't see what you just said about three years is in the record. We had alluded to it. Is that still pending? Are you saying that's still pending? Because it seems to me if that's still pending, you don't have to register again. Did you represent him on that? And that's how you got no registration? When he came to me about you failed to register, I looked at the case, and one of the first things we did was file, you don't have to register anymore. And it was granted. So what happened to the petition he came to you for? Well, the one he came with is still pending. So there's a criminal case pending for failure to register for sex offender. So that's why when I saw the state's position, they probably didn't, maybe didn't know. I don't know. But the consequences when you have a wrong that took place here, and I know I'm pushing it out. I understand that. Go ahead and finish your sentence. So what? Faced with the enormity of the wrong, just on constitutional grounds alone, I'd be here arguing because of my philosophy about the importance of constitutional guarantees. But here, he should never have been adjudicated to begin with. Now he carries the burden for the rest of his life, plus facing prison when he didn't. Well, that's my answer. Okay. Thank you very much. Ms. Camden? May it please the Court? Counsel. I'm Jennifer Camden on behalf of the people. The respondent in this case was found delinquent in September 2010, and as Your Honor noted, he did serve his five-year probation term. And in 2018, he prevailed on his petition to eliminate his sex offender registration requirement. During the pendency of those proceedings beginning in 2017, seven years after his adjudication of delinquency, he began filing the present petitions to set aside that adjudication well outside the 30-day window set by the Supreme Court rules and Supreme Court cases interpreting them. So the trial court lacked jurisdiction because those petitions were untimely filed. The circuit court correctly ruled that it lacked jurisdiction to hear it, and this Court should affirm the circuit court's dismissal of those untimely filed petitions or dismiss the appeal altogether because the defendant did not move to withdraw his guilty plea. Is there any rule that applies to these late filings? I know the Post-Conviction Act does not apply. Right. That's correct. What about Mr. Hutnick's argument that some rule must apply? Is there any you know of? No, Your Honor. There's not. It's true that the Post-Conviction Hearing Act does not apply to juvenile, to proceedings under the Juvenile Court Act, to juvenile petitioners. So he's correct that for facts discovered after the 30-day window runs, which is his allegation here, it's true that there's no statutory remedy for that. I note that the appellate court spoke to that in a case called Vincent K., which is cited in the People's Brief, in which the appellate court observed that the Post-Conviction Hearing Act does not extend to juveniles and that the court stated that the unavailability of post-conviction proceedings for juveniles is mitigated by the fact that they're in a system designed for their protection and that the court itself can step in if it perceives injustice even where a juvenile is represented by counsel. So that provides some measure of protection. And apparently the General Assembly has not, in the wake of Vincent K., seen fit to establish any other form of relief. With regard to the more general principle that for every wrong there must be a remedy, I would note that in other cases cited in the People's Answer Brief, J.T. and Henry P., in both of those cases the appellate court lacked jurisdiction to consider issues arising from juvenile proceedings where the appeals were not timely filed. And that's true even though the challenge in Henry P. was of a constitutional dimension. And that's also true in the Scrid case, Illinois, from the Illinois Supreme Court in 2011. That was a case involving an adult defendant who claimed a constitutional violation 12 years after he pled guilty and the circuit court lacked jurisdiction to hear that claim. So for that reason, the circuit court did not have jurisdiction to consider these claims. The Respondent argued that constitutional claims may be raised at any time, but that's true only where the court has jurisdiction. And in this case it did not. Unless the Court has further questions, I respectfully request that the Court confirm for the reasons in the People's Answer Brief. Thank you, Ms. Camden. As always, you've done a very nice job. Mr. Hudson, do you have a reply? I'm sorry. No, I think I said it all. Okay. Thank you both. This matter is expedited, and the opinion or order is due September 13th, and it will be forthcoming before that date. Thank you.